U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT
AUG 19 2009
TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

JAMES CLINTON ABSHURE

versus

CADDO PARISH SHERIFF'S
OFFICE, ET AL.

CIVIL NO. 06-2031
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendants, the Caddo Parish Sheriff's Office ("CPSO") and Donald Webb ("Deputy Webb"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Record Document 38. Based on the following, the defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

On October 31, 2006, James Clinton Abshure ("Abshure") filed a pro se complaint in federal court against the CPSO, Jermaine Kelly ("Deputy Kelly"), and the Caddo Correctional Center ("CCC") for violations of Title 42, United States Code, section 1983. See Record Document 1. Abshure alleges that when he was arrested, Deputy Kelly prevented him from injecting himself with insulin and prevented him from carrying his insulin and eye-glasses with him to CCC. See id. at 5. Abshure further alleges that after arriving at CCC, an unknown deputy forced him

to sign a document that he was unable to read. Finally, Abshure alleges that he was denied adequate medical treatment while in the custody of the CPSO. See id. Abshure seeks "[m]onetary compensation for the pain and suffering, lack of proper medical attention, intimidation and the fact that [he] nearly died." Id. at 6.

On May 24, 2007, Deputy Kelly filed a Rule 12(b)(6) motion to dismiss. See Record Document 15. Abshure, now represented by counsel, filed an opposition to Deputy Kelly's motion to dismiss. See Record Document 21. On October 1, 2007, this court adopted the Magistrate's Report and Recommendation and granted Deputy Kelly's motion to dismiss. See Record Document 27.

On July 30, 2007, Abshure filed his first amended complaint which added Deputy Webb of the CPSO as a defendant. See Record Document 23. On January 13, 2008, Abshure filed his second amended complaint which reinstated Deputy Kelly as a named defendant for his alleged acts of negligence under Louisiana Civil Code article 2315 and the Louisiana Constitution. See Record Document 33. After a delay for discovery, the defendants filed the instant motion for summary judgment on November 18, 2008. See Record Document 38. Abshure filed a memorandum in opposition to the motion for summary judgment on March 23, 2009, and the defendants filed a reply memorandum on April 16, 2009. See Record Documents 54 and 68. Finally on May 11, 2009, Abshure filed a rebuttal memorandum in opposition to the summary judgment. See Record Document 74.

## II. RELEVANT FACTS

As mentioned above, Abshure alleges that he was denied adequate medical

treatment while in the custody of the CPSO. Abshure has been a Type 1 diabetic since he was fifteen years old; he takes insulin by injection twice a day. According to Abshure, if he misses an injection, he could suffer severe weakness, violent illness, and eventually death. See Record Document 23 at 2-3.

On the night of November 3, 2005, Deputy Kelly arrested Abshure on a misdemeanor charge at Abshure's home. Before they left the home, Abshure asked that he be permitted to inject himself with a required dose of insulin, stating to Deputy Kelly that he "needed the shot for his diabetic condition and that he was needing his second shot of the day." Abshure's sister also told Deputy Kelly of Abshure's need for insulin. See id. at 3. Despite the requests, Deputy Kelly prevented Abshure from injecting himself with his nightly dosage of insulin. At 11:30 p.m., Abshure was booked into CCC, seen by a nurse, and reported that he took insulin twice a day. Once booking was complete, Abshure was placed in the infirmary and monitored by a nurse who took multiple blood sugar readings.

At 1:30, 3:30, and 5:30 a.m., Abshure's blood sugar was 395, 393, and 456 respectively.[1] Around 7:15 a.m., while still being monitored in the infirmary, Abshure's blood sugar rose to 527. Pursuant to CPSO policy, he was then transported by Deputy Webb from CCC to the Louisiana State University Health Science Center ("LSU hospital") in Shreveport, Louisiana. Before he left CCC, Abshure's blood sugar decreased to 486. Abshure contends that when he left CCC, he was so weak

---

[1] A normal level would be around 100. See Record Document 54, Ex. U at 12.

3

that he had to be placed in a wheelchair.

Abshure left CCC at approximately 8:15 a.m. and arrived at LSU hospital around 8:45 a.m. He was triaged and placed in a holding area. At 9:34 a.m. and 10:45 a.m., Abshure's blood sugar was 462 and 517 respectively. Abshure contends that a nurse told him that his blood sugar was over 600 since that was the maximum the meter could read.

Although Abshure waited in this holding room for approximately eight hours, he never received treatment despite his multiple requests. Around 3:20 p.m., Abshure signed a waiver of medical treatment so that he could return to CCC in hopes of "bonding out." Abshure was unable to make bond. Instead, he was again placed in the infirmary and monitored by Nurse Sylvia Busey ("Nurse Busey"). At 4:30 p.m., Abshure's blood sugar was 285.[2] Once again, Abshure never received an insulin injection.

Later that evening, Abshure exhibited symptoms of ketoacidosis[3]: nausea, vomiting, shortness of breath, and general malaise. At approximately 8:00 p.m., Abshure's blood level was 584. According to Nurse Busey, she requested that Abshure return to LSU hospital in order to obtain treatment. Nurse Sheila Wright ("Nurse Wright") testified that Abshure then refused to return to LSU hospital and

---

[2] Abshure denies that his blood sugar was 285, contending that it was unusual and likely an error. Nurse Busey admits the reading was "unusual."

[3] Ketoacidosis is an accumulation of ketone bodies in the blood, which results in metabolic acidosis, and is often associated with uncontrolled diabetes mellitus. See Dorland's Illustrated Medical Dictionary 17, 977 (31st ed. 2007).

again signed a medical waiver. Abshure contends that when he signed the refusal form, he was confused and that his diabetic condition likely affected his ability to make a rational decision.

At 3:00 a.m. the next morning, Abshure became violently ill and began throwing up. He was transported back to the hospital and immediately treated with insulin. After three days, Abshure was released from the hospital. See id. at 5-6.

### III. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).

All facts and inferences are viewed in the light most favorable to the non-

moving party, and all reasonable doubts are resolved in that party's favor. See Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990). If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied. See id.

**B.  Deliberate Indifference.**

To prevail under section 1983, Abshure must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the Constitution. Although the Eighth Amendment does not mandate a specific level of care, it imposes a duty on prison officials to ensure that inmates receive adequate medical care. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006). To meet his burden, Abshure must demonstrate that the prison officials were deliberately indifferent to his serious medical needs. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 291-92 (1976). Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. See Horton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Deliberate indifference is "an extremely high standard to meet." Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). Abshure must show that (1) the defendants were aware of facts from which an inference of excessive risk to his health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. See Farmer v. Brennan, 511 U.S. 825, 837, 114

S. Ct. 1970, 1979 (1994). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A prison official is deliberately indifferent only if he knows that an inmate faces a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it. See id.

C. **Qualified Immunity And Deputy Webb.**

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Gobert, 463 F.3d at 345. "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." Id. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).

Deputy Webb worked for the CPSO as a transportation deputy when he drove Abshure to LSU hospital and guarded him during his hospital visit. Deputy Webb testified in his affidavit that Abshure was seen by LSU staff upon his arrival, that

medical personnel came and went from the holding area, and they took several blood sugar readings from Abshure. He testified that Abshure requested to use the telephone to call someone to "bond out" of jail, but that he told Abshure that he could not let him do so.[4] According to Deputy Webb, "I merely told him his options, he could stay at LSU and see the doctor or he could sign a medical refusal and could be taken back to jail and use the phone." Record Document 38, Ex. 4 at 2. Deputy Webb testified that he had no knowledge of the charges against Abshure and the likelihood that bond would be set. He further stated that "[d]uring my time with Mr. Abshure at LSU Hospital and going to and from the hospital he did not appear to be having medical problems and was not in any difficulty." Id.

The defendants contend that Deputy Webb is "obviously entitled to qualified immunity." Record Document 38 at 2. However, the defendants merely restate the applicable legal standard that courts apply when evaluating a qualified immunity defense. See id. at 9. They do not offer any legal argument in support.

Abshure contends that he was denied adequate medical care when he remained in a holding room, guarded by Deputy Webb, for approximately eight hours without treatment. See Record Document 54 at 21. According to Abshure, he repeatedly requested insulin from Deputy Webb and pleaded with him to seek insulin from hospital employees. See id. Abshure also contends that Deputy Webb told him that

---

[4]Because inmate calls are recorded at CCC for security purposes, inmates are not allowed to use telephones when they leave jail for doctors or other visits. See Record Document 38, Ex. 4 at 2.

he should return to CCC so that he could "bond out" and that Abshure followed Deputy Webb's advice to his own detriment. See id. Finally, Abshure contends that Deputy Webb "failed to obey doctor's orders specifically made for Plaintiff's condition: Webb returned Abshure from LSU-HSC despite his high blood sugar reading in excess of 500." Id. at 20.

For summary judgment purposes, all facts and inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts are resolved in that party's favor. See Puckett, 903 F.2d at 1016. According to Abshure, Deputy Webb "was just try[ing] to get me back [to CCC] so that I could bond out. That's how it was put to me. It wasn't whether or not he was guaranteeing anything." Record Document 54, Ex. C at 128. Abshure stated "I felt like he was on my side of getting me back to the jail so that I could try to get bonded out because I wasn't going to be bonded out sitting in the holding cell." Id. He continued: "I felt like he was encouraging me to go ahead so that I could make phone calls and possibly get bonded out." Id.

Accepting all these allegations as true, the court finds that Deputy Webb was not deliberately indifferent to Abshure's serious medical needs. Deputy Webb did not refuse to treat Abshure, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See Gobert, 463 F.3d at 346. Rather, Deputy Webb transported Abshure to the hospital, waited with him in the holding room, suggested that he might receive better treatment if he were to "bond out," and then transported

him back to CCC. Such actions do not constitute an unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Estelle, 429 U.S. at 106, 97 S. Ct. at 291-92. Accordingly, the claims against Deputy Webb must be dismissed.

**D.    Official Policy And CPSO Custom.**

A municipality is not liable under section 1983 on the theory of respondeat superior, but instead only for acts that are directly attributable to it "through some official action or imprimatur." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). A plaintiff must not only identify a constitutional violation, but also that an official policy promulgated by the municipality's policymaker was the "moving force" behind the injury alleged. See id. "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" James v. Harris, — F.3d —, 2009 WL 2366557 (5th Cir. 2009).

Official policy usually arises in written policy statements, but may also arise from a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579. A plaintiff must show that there was a direct casual link between the policy and the violation. See id. at 580. "These requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal

liability collapses into respondeat superior liability.'" Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998) (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382 (1997)).

The written policy of the CPSO states that "[i]f an inmate has a blood sugar greater than 500 he/she should be transported to [LSU hospital] for further evaluation and treatment." Record Document 54, Ex. M. It also states that if a health service personnel has a question concerning an inmate's blood sugar, he can contact the on-call physician or refer the inmate to doctors call. See id. According to Nurse Busey, medical personnel first attempt "to obtain records from the patient's treating physician if possible to have jail physicians order treatment by phone and if no records are received to obtain orders by sending him to LSU hospital." Record Document 38, Ex. 2 at 3. According to Dr. Russel Roberts, a family physician at LSU hospital, medical personnel cannot simply rely upon the statement of the inmate regarding the medication taken. See id., Ex. 3. They must consider the unique circumstances of a jail such as the influence of alcohol, drugs, previous diet, previous medications, and unreliable histories. See id.

Abshure takes issue with these policies and customs, claiming they are constitutionally inadequate and amount to deliberate indifference. He contends that they give "too much discretion to a nurse who has no prescriptive authority." Record Document 54 at 11. However, after viewing the policies in light of the facts of this case, it becomes clear that the policies were not the "moving force" behind Abshure's injuries.

As mentioned above, medical personnel first attempt to obtain medical records from an inmate's treating physician so that an on-call jail physician can order treatment. As Abshure was booked into CCC around 11:00 p.m. at night, medical personnel were unable to obtain his records. As a result, Abshure was placed in the infirmary and his blood sugar was monitored. Before a doctor's office would open the next morning, Abshure's blood sugar rose above 500, triggering CPSO policy to immediately transport him to LSU hospital. Abshure was prepped for transport and arrived at LSU hospital within the hour.

Abshure next contends that the CPSO's lack of policy regarding an inmate's treatment at LSU hospital denied him adequate medical care and provides a basis for municipal liability. Abshure faults the nurses at CCC for not calling the hospital to check on him. See Record Document 54 at 16-17. Such contentions are without merit; Abshure has provided no authority for the proposition that the CPSO is liable for any potential negligence on the part of LSU hospital.

Finally, Abshure contends that Nurse Busey violated policy when she failed to contact an on-call physician rather than repeatedly request that Abshure return to LSU hospital. See id. at 19. Once again, this contention is without merit. Nurse Busey's actions and the CPSO policy regarding the duties of medical personnel owed to an inmate who returns from LSU hospital after signing a medical waiver do not rise to the level of deliberate indifference. Nurse Busey, who has been a registered nurse since 1956 and had worked at Shumpert Hospital for over thirty years, determined that Abshure needed more than a dose of insulin and needed to be seen and treated

12

at LSU hospital. See Record Document 38, Ex. 2 at 2. Nurse Busey also considered the possibility that Abshure would "bond out" and that she would be unable to monitor him if insulin were given. See id. at 3. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert, 463 F.3d at 346. Accordingly, the "policy claims" against the CPSO must be dismissed.

E.  **State Law Negligence Claims.**

Finally, Abshure contends that Deputy Webb and Deputy Kelly violated Louisiana Civil Code article 2315 and the Louisiana Constitution when they negligently failed to provide him with adequate medical assistance.[5] Under Louisiana law,

> a sheriff or police officer owes a general duty to a prisoner to save him from harm and the officer is liable for the prisoner's injury or death resulting from a violation of such duty. Also, the supreme court "recognized a general rule that police officers are charged with a higher degree of care for a prisoner's safety and protection when the officers are aware that the prisoner is in an intoxicated state...." However, the police officer must only do what is reasonable under the circumstances, and he is only liable for a certain category of risks.

Bonnet v. Lafayette Parish Sheriff, 2 So.3d 1280, 1283-84 (La.App. 3 Cir. 2009)

---

[5]Despite the court's previous ruling that it was reasonable for Deputy Kelly to prevent Abshure from injecting himself with insulin or bringing it with him to jail, Abshure again complains that Deputy Kelly "failed to allow him to take insulin from his home to jail." Record Document 33 at 8. The court need not rule on this argument again.

(citations omitted). For the deputies to be liable to Abshure, they had to breach this duty by failing to act reasonably under the circumstances. As discussed in the report and recommendation and above, Deputy Kelly and Deputy Webb acted reasonably under the circumstances and did not breach their duty to Abshure. Thus, they were not negligent under Louisiana law and the claims against them must be dismissed.

## IV. CONCLUSION

It is undisputed that Abshure is less than pleased with the medical treatment he received in the days following his arrest. It took over twenty-four hours and two trips to the hospital before he received an insulin injection. However, viewing the facts in the light most favorable to Abshure, it is clear that no liability may attach to Deputy Webb, Deputy Kelly, or the CPSO for events that led to his episode of ketoacidosis. Neither deputies, through their actions, nor the CPSO, through its policies, exhibited any deliberate indifference to Abshure's serious medical needs. Their actions were certainly not the "moving force" behind Abshure's injuries. Accordingly, the defendants' motion for summary judgment is **GRANTED** in its entirety.

A judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 19th day of August, 2009.

JUDGE TOM STAGG